# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JACK KANANIAN, Executor of Estate of Harry Kananian, | ) ) ) | CASE NO. 1:07 CV 3188 |
| Plaintiffs, | ) | JUDGE DONALD C. NUGENT |
| v. | ) ) | |
| BRAYTON PURCELL, LLP, et al., | ) ) ) | MEMORANDUM OPINION AND ORDER |
| Defendants. | ) | |

This matter is before the Court on the Motion of Defendant Early, Ludwick & Sweeney to Dismiss the Complaint for Lack of Personal Jurisdiction, or in the alternative, Defendant requests that the Court dismiss Plaintiff's second claim for failure to state a claim upon which relief may be granted. (ECF #12).

## FACTUAL BACKGROUND

Plaintiff Jack Kananian, as executor of the estate of Harry Kananian, filed this action against Brayton Purcell, LLP, a California law firm and its predecessor Brayton, Purcell, Curtis & Geagan, Christopher E. Andreas, an attorney of the Brayton firm, and Early, Ludwick & Sweeny, LLC ("EL &S), a Connecticut law firm, alleging claims of negligent malpractice and intentional malpractice. Defendants removed the action to this Court invoking this Court's diversity jurisdiction.

In Count 1 of his Complaint, Plaintiff alleges that both law firms represented Harry Kananian, deceased, his wife Ann Kananian and Jack Kananian, as executor of the estate of Harry Kananian, in relation to any asbestos-related claims held by the Kananians. (Complaint, ¶4). Plaintiff submits that EL &S submitted asbestos-exposure claim forms to various liability

trust funds on behalf of Plaintiff. (Complaint, ¶6). Plaintiff alleges that these claims forms were negligently submitted without knowledge that the claims were not grounded in fact and that as a result of the negligent submission of the claim forms, as well as the negligent misconduct of Defendant Andreas, Plaintiff was forced to settle the law suit captioned, Jack Kananian, et al. v. Lorillard Tobacco Company, Cuyahoga Country Court of Common Pleas Case No. 442750, for a sum which did not reflect the actual value of the claim. (Complaint, ¶¶7-8). This negligent conduct of the Defendants fell below the acceptable standards of loyalty, skill, care and diligence requisite in the legal representation of a client. (Complaint, ¶10).

In Count Two, Plaintiff alleges that Defendants submitted the claim forms with actual or constructive knowledge that the claims were not grounded in fact and were fraudulent in nature. (Complaint, ¶12). As a result of the fraudulent submission of claims forms, and the intentional professional misconduct of Defendant Andreas, Plaintiff was forced to settle its lawsuit against Lorillard Tobacco Company for a sum which did not reflect the actual value of the claim. This collective intentional conduct of all Defendants fell below the acceptable standards of loyalty, skill, care and diligence requisite in the legal representation of a client. (Complaint, ¶¶ 13-14).

Plaintiff attaches three retainer agreements to the Complaint. The first retainer agreement is between Harry and Ann Kananian as clients and the law firm of Early, Ludwick & Sweeney, LLC, to investigate, and if warranted, to represent the clients in claim(s) against any relevant party arising out of any exposure to asbestos or asbestos related materials. The agreement is dated February 24, 2000 and is signed by Harry and Ann Kananian as clients and witnessed by Jack Kananian and by a representative of EL&S and by referring counsel James F. Early.

The second agreement attached to the Complaint is a Contingency Fee Contract between Harry and Ann Kananian as clients and Brayton, Purcell, Curtis & Geagan ("Brayton") as Attorney. The Agreement provides that the Clients retain Attorney to represent Clients in connection with a claim for damages, injury or loss against such persons who may be liable therefor for asbestos-related injuries and/or wrongful death. The Agreement states that Attorney intends to work with EL&S on this matter and that attorney fees will be divided with EL&S at no increase in the amount of attorney fees above those agreed to in Client's prior contract with EL&S. The Agreement is signed by Harry and Ann Kananian, but the copy attached to the Complaint is not signed by a representative of the Brayton firm and is not dated.

The last agreement attached to the Complaint is a Contingency Fee Contract between Jack Kananian as client and Brayton as Attorney. The Agreement provides that the Clients retain Attorney to represent Clients in connection with a claim for damages, injury or loss against such persons who may be liable therefor for asbestos-related injuries and/or wrongful death. . The Agreement also states that Attorney intends to work with EL&S on this matter and that attorney fees will be divided with EL&S at no increase in the amount of attorney fees above those agreed to in Client's prior contract with EL&S. This Agreement is signed by a representative of Brayton and by Jack Kananian and was executed at Novato, California on August 29, 2001.

The final documents attached to the Complaint are the half sheet entry and the 19 page Opinion and Order of Judge Harry A. Hanna in Jack Kananian, et al. v. Lorillard Tobacco Company, Case No. CV 442750 in the Court of Common Pleas, Cuyahoga County denying Defendant's Motion to Dismiss the Complaint as a sanction for the conduct of the Brayton firm

and Mr. Andreas and granting the Motion to revoke the *Pro Hac Vice* privileges extended to the Brayton firm and Mr. Andreas. The Court found 13 instances of lying and misconduct on the part of the Brayton firm and/or Mr. Andreas and stated that "Brayton Purcell institutionally and Christopher Andreas individually have failed to abide by our rules. They have not conducted themselves with dignity. They have not honestly discharged the duties of an attorney in this case. Therefore, they have forfeited their privileges to practice before this Court." While noting that normally there should be consequences for such egregious behavior, including dismissal of the complaint, Judge Hanna declined to dismiss the complaint in this instance because neither the Kananian family or their subsequent counsel participated in the conduct of Mr. Andreas or the Brayton firm.

Defendant EL&S moves to dismiss the Complaint against it for lack of personal jurisdiction because exercise of personal jurisdiction over EL&S, a Connecticut law firm, would violate due process as EL&S never purposely availed itself of the privilege of acting in Ohio, the claims against EL&S do not arise from any conduct in Ohio, and EL&S does not have a substantial connection to Ohio and is not subject to Ohio's Long Arm Statute. Alternatively, should the Court find that EL&S is subject to personal jurisdiction in Ohio, it moves to dismiss Plaintiff's second claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. This motion is now fully briefed and ready for decision.

### STANDARD OF REVIEW OF A MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

When personal jurisdiction is challenged, the plaintiff bears the burden of demonstrating that jurisdiction is proper. *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135, 1141

(1936).  In the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.  *Theunissen*, 935 F.2d at 1458 (6th Cir. 1991); *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974). To determine whether personal jurisdiction is proper in a diversity case, district courts must apply the law of the state in which they sit.  *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), cert. denied, 450 U.S. 981, 67 L.Ed.2d 816, 101 S.Ct. 1517 (1981).

An Ohio court can exercise personal jurisdiction over a defendant if: 1) personal jurisdiction is conferred by Ohio's Long Arm Statute, O.R.C. § 2307.382; and 2) the exercise of personal jurisdiction satisfies the Due Process requirements of the Fourteenth Amendment.  *See Nationwide Mut. Ins. Co. v. TRYG Int'l Ins. Co., Ltd.*, 91 F.3d 790 (6th Cir. 1996).

Ohio's Long Arm Statute sets forth nine ways in which a defendant may subject himself to the jurisdiction of Ohio courts.  Plaintiff asserts that EL&S is subject to personal jurisdiction in Ohio under Section 2307.382(A)(2) of the Long Arm Statute which allows personal jurisdiction over a person "who acts directly or by an agent, as to a cause of action arising from the person's [c]ontracting to supply services or goods in this state." O.R.C. § 2307.382(A)(2).

Even assuming that EL&S is subject to personal jurisdiction under § 2307.382(A)(2), the exercise of personal jurisdiction must also meet the due process requirements of the Fourteenth Amendment. In order to satisfy the due process requirement for personal jurisdiction, Plaintiff must demonstrate that the Defendant had sufficient minimum contacts with Ohio such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See Bird v. Parsons*, 289 F.3d 865, 871-72 (6th Cir. 2002) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Plaintiff could meet this burden by demonstrating that

5

the court has general or specific jurisdiction over the Defendant.

General jurisdiction is established if a defendant's contacts with the forum state are "continuous and systematic." *Bird*, 289 F.3d at 873. A defendant may be held to answer in a court of general jurisdiction even if the action is unrelated to defendant's contacts with the state. *Id*. In this action, there is no evidence to suggest that EL&S has continuous and systematic contacts with Ohio sufficient to the purpose of establishing general jurisdiction. *See, e.g,. Resolution Trust Company v. First of America Bank*, 796 F. Supp 1333, 1336-37 (C.D. Cal 1992); *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998) (general jurisdiction not found despite routine advertising in national media distributed in forum state, as well as bank accounts and security interests in property within forum state.)

In the absence of general jurisdiction, a court may still exercise jurisdiction over Defendant if it can establish specific jurisdiction. Specific jurisdiction is determined on a case-by-case basis, and is permitted only if Defendant's contacts satisfy a three-part test: 1) Defendant must have "purposely availed" itself of the privilege of acting in or causing a consequence in Ohio; 2) the cause of action must arise from Defendant's activities in Ohio; and 3) Defendant's acts must have a substantial enough connection with Ohio to make the exercise of jurisdiction reasonable. *See Southern Machine Co. v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir. 1968).

A defendant purposely avails itself of the privileges and benefits of conducting business with the forum state "where the defendant's contacts with the forum state proximately result from actions by the defendant himself which create a 'substantial connection' with the forum state and where the defendant's conduct and connection with the forum are such that he should

reasonably anticipate being haled into court there." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) ) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

## DISCUSSION

Addressing the issue of whether EL&S is subject to Ohio's Long Arm statute, Plaintiff asserts that EL&S has acted directly or by an agent as to a cause of action arising from its contracting to supply services in Ohio and thus is subject to personal jurisdiction under § 2307.382.(A)(2). Defendant argues that its contract with Harry and Ann Kananian is not a contract to supply services in Ohio. Rather, it was engaged to represent Harry Kananian in filing claims forms in New York, Illinois, Delaware, and Connecticut. The Retainer Agreement between EL&S and Harry and Ann Kananian does not specifically state that EL&S is being retained to provide services in Ohio or in New York, Illinois, Delaware or Connecticut or in any other state. Notably, the Retainer Agreement and the letter from EL&S attached as Exhibit A to the Complaint imply that EL&S will represent their clients in any jurisdiction that would be applicable. No specific jurisdiction is mentioned. Thus, the Retainer Agreement is not a contract to provide services in Ohio.[1]

None of the claim forms filed by EL&S on behalf of the Kananians were filed in Ohio,

---

[1] EL&S also attempts to avoid personal jurisdiction under Ohio's Long Arm statute based upon the Retainer Agreement by stating that Plaintiff Jack Kananian was not a party to that Agreement and that EL&S never represented Jack Kananian as an individual or as executor of Harry Kananian's estate. However, that argument is negated by the fact that James Early, on behalf of EL&S, signed or authorized the signature of all six amended claims forms which were explicitly submitted by EL&S on behalf of Jack Kananian, as executor of the estate of Harry Kananian.

7

nor is there any allegation that EL&S ever represented Plaintiff in any court proceeding in Ohio. Plaintiff refers to correspondence from EL&S which indicated that "we would associate ourselves with local attorneys whom we know, and whom we have worked with in the past." (Complaint, Ex. A) Further, Plaintiff contends that the original asbestos claims forms filed by EL&S on behalf of Harry Kananian prove that EL&S represented Harry Kananian for asbestos exposure which occurred within the state of Ohio. All six claims forms submitted against various asbestos trusts contain claims against the pertinent trusts for Harry Kananian's alleged exposure to asbestos while working or residing in Ohio as well as while working at various shipyards outside of Ohio during his tenure in the army. While Harry Kananian may have been exposed to asbestos in Ohio, it does not automatically follow that a contract to represent Mr. Kananian for his asbestos exposure in Ohio and elsewhere would be a contract to provide services in Ohio. As it turns out, all of the claims filed by EL&S were filed in other states and all work on the claims was performed by EL&S outside of Ohio.

The affidavit of James F. Early submitted by EL&S states that the only time that an EL&S attorney visited Ohio was to conduct an initial interview with Mr. Kananian. That visit lasted less than 24 hours. (Early Aff. ¶11). Mr. Early further asserts that EL&S does not maintain any offices, bank accounts, or business interests in Ohio, is not licensed to do business in Ohio and does not have any attorneys residing, or maintaining a license to practice law in Ohio. (Early Aff. ¶6). In addition, Mr. Early claims that all acts performed by EL&S in relation to the representation of Mr. Kananian took place in Connecticut, with all claim forms being submitted to settlement trusts maintained in Connecticut, Delaware, New York and Illinois. (Early Aff. ¶10). Mr. Early also claims that upon initiation of the attorney client relationship

8

between EL&S and Harry Kananian, it was decided, with Mr. Kananian's knowledge and consent, that because his asbestos exposure occurred outside of Ohio, his claims would be pursued, and thus his representation would take place, in a venue outside of the state of Ohio. (Early Aff. ¶12). This assertion, however, appears to be contradicted by the claim forms submitted on Mr. Kananian's behalf by EL&S. Each claim form includes several potential exposure sites in Ohio, in addition to the relatively short exposure times at shipyards during Mr. Kananian's military service. Nevertheless, as noted above all of the claims submitted by EL&S on Mr. Kananian's behalf were submitted to trusts maintained in states other than Ohio.

Plaintiff contends that EL&S participated in the Lorillard litigation filed in Cuyahoga County based upon the two Contingency Fee Contracts with Brayton Purcell that are attached to the Complaint and because the claim forms submitted by EL&S became an issue in the litigation. Review of the Contingency Fee Contracts shows that EL&S is not a signatory on either of the contracts. These contracts are signed by Brayton and Harry and Ann Kananian and Brayton and Jack Kananian , respectively. The contract between Brayton and Harry and Ann Kananian states that Brayton intends to work with EL&S on this matter and that attorney fees will be divided with EL&S. This contract does not specifically reference the matter that Brayton was to represent the Kananians except as follows: "Client retains Attorney to represent Client in connection with a claim for damages, injury or loss against such persons who may be liable therefor for asbestos-related injuries and/or wrongful death." While the Court presumes that this refers to the action against Lorillard Tobacco filed in the Court of Common Pleas for Cuyahoga Country, there is no affidavit stating this fact. The Court would thus be required to infer that Brayton entered a contract to provide services in Ohio, which they did in fact provide through its

9

representation of the Kananians in the Lorillard matter, and further find that the naming of EL&S in the contract also binds EL&S to a contract to provide services in Ohio as required to satisfy § 2307.382.(A)(2) of the Long Arm statute.

There is no evidence showing that EL&S was admitted as co-counsel in the Ohio litigation. Mr. Early asserts that EL&S never participated in the lawsuit referenced in Plaintiff's Complaint and did not participate in the decision to file that case in Cuyahoga County. (Early Aff. ¶13). Plaintiff has submitted excerpts from Mr. Early's deposition taken during the Lorillard case which indicates that EL&S, with the input of the Brayton firm, amended the claim forms it filed on behalf of Mr. Kananian after factual errors were discovered. The factual errors on the claim forms apparently became a collateral issue in the Lorillard litigation and Judge Hanna permitted limited discovery of the six original asbestos claim forms. At that time, Judge Hanna noted that he did not have personal jurisdiction over EL&S and that EL&S' participation was purely to resolve collateral issues. (ECF #28, Ex. B p.5). In responding to Judge Hanna's requests by letter, EL&S stated that it was not submitting to the Court's jurisdiction, noting that the Court did not have personal jurisdiction over EL&S. (ECF #28, Ex. A, p. 1 and 3). There is no evidence that EL&S was a party to the Lorrilard litigation or that it represented Plaintiff in that litigation. The most that can be said is that EL&S revised the claim forms with the assistance of the Brayton firm and re-filed them with the various settlement trusts outside of Ohio. This evidence does not support Plaintiff's assertion that EL&S supplied services in Ohio. Moreover, there is no contract in which EL&S agreed to supply services in Ohio as required by R.C. § 2307.382(A)(2). *See Nationwide Life Ins. Co.v. Hampton Supply Inc.*, 829 F. Supp. 915 (S.D. Ohio 1993)(R.C. § 2307.382(A)(2) is satisfied only when the contract requires a party to

10

supply services or goods in the state of Ohio.) As Plaintiff bears the burden of proof in this matter, the Court can only conclude that EL&S is not subject to Ohio's Long Arm Statute.

Even if the Court concluded that EL&S was subject to Ohio's Long Arm Statute, the exercise of personal jurisdiction over EL&S would not satisfy the requirements of the Due Process Clause of the Fourteenth Amendment.

In order for this Court to assert personal jurisdiction over EL&S consistent with the principles of due process, EL&S' contacts with the State of Ohio must satisfy a three-part test: 1) Defendant must have "purposely availed" itself of the privilege of acting in or causing a consequence in Ohio; 2) the cause of action must arise from Defendant's activities in Ohio; and 3) Defendant's acts must have a substantial enough connection with Ohio to make the exercise of jurisdiction reasonable. *See Southern Machine,* 401 F.2d at 381.

It is clear from the evidence submitted to this Court that all of the actions of EL&S were taken outside of Ohio. Thus, there is no evidence that EL&S purposely availed itself of the privilege of acting in Ohio. The question would be whether it purposely availed itself of causing a consequence in Ohio by submitting claim forms with factual errors in trusts located outside of Ohio. While the errors in the claim forms may have had an adverse impact on Plaintiff's Ohio litigation, there is no evidence that EL&S intended to impact Plaintiff's Ohio litigation. Even if some argument could be made that an unintended consequence of actions taken outside of the state of Ohio constitute "purposely availing", it is clear that the cause of action in this case does not arise from EL&S' activities in Ohio. All of EL&S's actions in preparing and filing the claim forms, which form the basis of Plaintiff's malpractice allegations, were taken outside of Ohio. Finally, based upon the complete lack of any significant contacts with the state of Ohio, EL&S'

11

acts do not have a substantial enough connection with Ohio to make the exercise of jurisdiction reasonable. Accordingly, this Court cannot exercise personal jurisdiction over EL&S consistent with the Due Process Clause of the Fourteenth Amendment.

## CONCLUSION

For the reasons set forth above, the Motion of Defendant EL&S to Dismiss the Complaint against it for lack of personal jurisdiction (ECF #12) is granted and EL&S is dismissed from this action.

IT IS SO ORDERED.

                                             _/s/Donald C. Nugent_
                                             Judge Donald C. Nugent

DATED:  April 3, 2008