## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JACK KANANIAN, Executor of Estate of Harry Kananian, | ) ) ) | CASE NO. 1:07 CV 3188 |
| Plaintiff, | ) ) | JUDGE DONALD C. NUGENT |
| v. | ) ) | |
| BRAYTON PURCELL, LLP, et al., | ) ) | MEMORANDUM OPINION AND ORDER |
| Defendants. | ) ) ) | |

This matter is before the Court on Non-Party Witness Judge Harry A. Hanna's Motion To Quash Subpoena. (ECF # 41.)

## I. BACKGROUND

Plaintiff Jack Kananian, as executor of the estate of Harry Kananian, filed this action against Brayton Purcell, LLP, a California law firm and its predecessor Brayton, Purcell, Curtis & Geagan ("Brayton"), Christopher E. Andreas, an attorney of the Brayton firm, and Early, Ludwick & Sweeny, LLC ("EL&S"), a Connecticut law firm,[1] alleging claims of negligent malpractice and intentional malpractice. Defendants removed the action to this Court pursuant to this Court's diversity jurisdiction.

In Count I of the Complaint, Plaintiff alleges that both law firms represented Harry Kananian, deceased, his wife Ann Kananian and Jack Kananian, as executors of the estate of Harry Kananian, in relation to any asbestos-related claims held by the Kananians. (ECF # 1, Ex.

---

[1]  In an April 3, 2008 Opinion and Order, this Court granted a Motion to Dismiss the Complaint against EL&S based upon lack of personal jurisdiction. (ECF # 30.) Thus, EL&S is no longer a party to this action. (*Id.*)

2 at ¶ 4.) Plaintiff asserts that EL&S submitted asbestos-exposure claim forms to various liability trust funds on Plaintiff's behalf. (*Id.* at ¶ 6.) Plaintiff contends that these claim forms were submitted negligently and without knowledge that the claims were not grounded in fact. Plaintiff further alleges that, as a result of the negligent submission of the claim forms, as well as negligent misconduct committed by Mr. Andreas, he was forced to settle the lawsuit captioned, *Jack Kananian, et al. v. Lorillard Tobacco Company*, Cuyahoga Country Court of Common Pleas Case No. 442750 (the "underlying case"), for a sum that did not reflect the actual value of the claim. (*Id.* at ¶¶ 7-8.) According to Plaintiff, Defendants' negligent conduct fell below the acceptable standards of loyalty, skill, care and diligence requisite in the legal representation of a client. (*Id.* at ¶ 10.)

In Count II of the Complaint, Plaintiff alleges that Defendants submitted the multiple claim forms with actual or constructive knowledge that such claims were not grounded in fact and were, in fact, fraudulent in nature. (*Id.* at ¶ 12.) Plaintiff alleges that both the submission of fraudulent claim forms and the alleged intentional professional misconduct of Mr. Andreas, forced to him settle his lawsuit against Lorillard Tobacco Company for a sum that did not reflect the actual value of the claim.  Plaintiff asserts that Defendants' collective intentional conduct fell below the acceptable standards of loyalty, skill, care and diligence requisite in the legal representation of a client. (*Id.* at ¶¶ 13-14.)

Plaintiff attaches three retainer agreements to the Complaint. The first retainer agreement, dated February 24, 2000, is between Mr. and Mrs. Kananian, as clients, and EL&S. The agreement provides that EL&S to investigate and, if warranted, represent Mr. and Mrs. Kananian in any claims arising out of exposure to asbestos or asbestos-related materials.  Mr. and

2

Mrs. Kananian, an EL&S representative, and referring counsel James F. Early signed the agreement. Jack Kananian also signed the agreement as a witness.

The second agreement attached to the Complaint is a Contingency Fee Contract between Mr. and Mrs. Kananian as "Clients" and Brayton as "Attorney." Pursuant to the agreement, Mr. and Mrs. Kananian retained Brayton to represent them in connection with a claim for damages, injury or loss for asbestos-related injuries and/or wrongful death. The agreement provides that Brayton intended to work with EL&S on any such matter, and that attorney fees shall be divided with EL&S at no increase in the amount of attorney fees above those agreed to in the prior contract with EL&S. Mr. and Mrs. Kananian signed the agreement, but the version attached to the Complaint is not signed by a Brayton representative. Further, the version attached to the Complaint is undated.

The third agreement attached to the Complaint is a Contingency Fee Contract between Jack Kananian as "Client" and Brayton as "Attorney." The agreement provides that Mr. Kananian retained Brayton to represent him in connection with a claim for damages, injury or loss for asbestos-related injuries and/or wrongful death. The agreement also states that Brayton intended to work with EL&S on any such matter, and that attorney fees shall be divided with EL&S at no increase in the amount of attorney fees above those agreed to in Mr. Kananian's prior contract with EL&S. A Brayton representative and Mr. Kananian signed the agreement, which was executed in Novato, California on August 29, 2001.

The final documents attached to the Complaint are a half-sheet entry and a 19-page Opinion and Order of Cuyahoga County Common Pleas Judge Harry A. Hanna in the underlying case. In the Opinion and Order, the Court denied the Defendant's Motion to Dismiss the

3

Complaint as a sanction for the conduct of Brayton and Mr. Andreas. The Court, however,

granted the Motion to revoke the *pro hac vice* privileges extended to Brayton and Mr. Andreas.

In the Opinion, the Court found thirteen instances of lying and misconduct on the part of Brayton

and/or Mr. Andreas. The Court further provided that Brayton and Mr. Andreas failed to abide by

the applicable rules, stating, "They have not conducted themselves with dignity. They have not

honestly discharged the duties of an attorney in this case. Therefore, they have forfeited their

privileges to practice before this Court." While noting that normally there should be

consequences for such egregious behavior, including dismissal of the Complaint, Judge Hanna

declined to dismiss the Complaint in this instance because neither the Kananian family nor

subsequent counsel participated in Mr. Andreas or Brayton's conduct.

On March 5, 2009, Judge Hanna filed a Motion to Quash a subpoena served upon him by

Mr. Andreas in this case. (ECF # 41.) The Subpoena Duces Tecum and the Notice of

Deposition at issue were filed with this Court by counsel for Mr. Andreas on February 19, 2009.

(ECF # 39.) The Notice of Deposition states:

> At his deposition, the witness shall be questioned and examined with respect to, *inter
> alia*, the entry of an order on January 18, 2007, purportedly revoking the *pro hac vice*
> privilege of defendant Christopher E. Andreas to practice in the case of *Kananian v.
> Lorillard Tobacco Co.*, Cuyahoga Common Pleas Court case number CV 442750 and
> forming the basis of Jack Kananian's malpractice allegations against defendant
> Brayton Purcell, LLP and defendant Christopher E. Andreas in this case.

(ECF # 41, Ex. 3 at 6.) In addition to seeking the deposition testimony of Judge Hanna, the

subpoena requests that Judge Hanna produce the following at his deposition:

> 1. Any and all documents and items of any kind or description that the witness
> possesses, controls, or to which he otherwise has access, including, but not limited
> to, documents and items in his possession, custody, or control, or in the possession,
> custody, control, or access of his secretary, clerk, staff attorney, bailiff, assistant,

4

intern, or any other employee or agent, that are in any way related to, or connected with, the case of *Kananian v. Lorillard Tobacco Co.,* Cuyahoga County Common Pleas Court case number CV 442750.

2. Any and all documents and items of any kind or description that the witness possesses, controls, or to which he otherwise has access, including, but not limited to, documents and items in his possession, custody, or control, or in the possession, custody, control, or access of his secretary, clerk, staff attorney, bailiff, assistant, intern, or any other employee or agent, from the case file *of Kananian v. Lorillard Tobacco Co.,* Cuyahoga County Common Pleas Court case number CV 442750.

3. Any and all documents and items of any kind or description that the witness possesses, controls, or to which he otherwise has access, including, but not limited to, documents and items in his possession, custody, or control, or in the possession, custody, control, or access of his secretary, clerk, staff attorney, bailiff, assistant, intern, or any other employee or agent, that are in any way related to, or connected with, any lectures, classes, symposia, conferences, quasi-judicial proceedings, or other similar events to which the witness was invited to attend, participate, speak, present, comment upon, or address matters pertaining or relating, either directly or indirectly, to the case of *Kananian v. Lorillard Tobacco Co.,* Cuyahoga County Common Pleas Court case number CV 442750.

4. Any and all documents and items of any kind or description that the witness possesses, controls, or to which he otherwise has access, including, but not limited to, documents and items in his possession, custody, or control, or in the possession, custody, control, or access of his secretary, clerk, staff attorney, bailiff, assistant, intern, or any other employee or agent, that are in any way related to, or connected with, fees, monies, gratuities, gifts, per diem expenses, meals, accommodations, transportation, or any other item or thing of value the witness received from any source in connection with any seminars, lectures, classes, symposia, quasi-judicial proceedings, conferences, or other similar events to which the witness was invited to attend, participate, speak, present, comment upon, or address matters pertaining or relating, either directly or indirectly, to the case of *Kananian v. Lorillard Tobacco Co.*, Cuyahoga County Common Pleas Court case number CV 442750, including, but not limited to, the following:

    a. Washington D.C. Conference (February 2007)
    b. American Conference Institute's 8th National Litigating, Settling & Managing Asbestos Claims Conference (Las Vegas, Nevada, June 21-22, 2007)
    c. Mealey's National Asbestos Litigation SuperConference (Scottsdale, Arizona, September 22-24, 2008)

5. Any and all electronically stored information of any kind or description that the

witness possesses, controls, or to which he otherwise has access, including, but not limited to, electronically stored information in his possession, custody, or control, or in the possession, custody, control, or access of his secretary, clerk, staff attorney, bailiff, assistant, intern, or any other employee or agent, that either directly or indirectly pertains or relates to the case of *Kananian v. Lorillard Tobacco Co.,* Cuyahoga County Common Pleas Court case number CV 442750 and/or any of the above-described matters—including, but not limited to, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations— stored in any medium from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form. Any such electronically stored information shall be produced in a form or forms in which they are ordinarily maintained or in a reasonably usable form or forms.

6. Any and all documents, writings, correspondence, e-mails, e-mail attachments, voice mail messages, transcribed voice mail messages, word processing files, compact/floppy discs, DVDs, or other form of electronically stored information of any kind or description that the witness possesses, controls, or to which he otherwise has access, including, but not limited to, documents, writings, correspondence, e-mails, e-mail attachments, voice mail messages, transcribed voice mail messages, word processing files, compact/floppy discs, DVDs, or other form of electronically stored information in his possession, custody, or control, or in the possession, custody, control, or access of his secretary, clerk, staff attorney, bailiff, assistant, intern, or any other employee or agent, either personally generated by the witness or provided directly or indirectly to the witness or his secretary, clerk, staff attorney, bailiff, assistant, intern, or any other employee or agent, by attorneys representing the Kananian family and/or Lorillard Tobacco Company that were utilized, consulted, copied, or referenced by the witness in connection with his preparation and entry of an order on January 18, 2007, purportedly revoking the *pro hac vice* privilege of defendant Christopher E. Andreas to practice in the case of *Kananian v. Lorillard Tobacco Co.,* Cuyahoga County Common Pleas Court case number CV 442750.

7. Any and all documents, writings, correspondence, e-mails, e-mail attachments, voice mail messages, transcribed voice mail messages, word processing files, compact/floppy discs, DVDs, or other form of electronically stored information of any kind or description that the witness possesses, controls, or to which he otherwise has access, including, but not limited to, documents, writings, correspondence, e-mails, e-mail attachments, voice mail messages, transcribed voice mail messages, word processing files, compact/floppy discs, DVDs, or other form of electronically stored information of any kind or description in his possession, custody, or control, or in the possession, custody, control, or access of his secretary, clerk, staff attorney, bailiff, assistant, intern, or any other employee or agent, related to or connected with any and all pre-trial settlement negotiations and/or the settlement ultimately reached by and between the parties in the case of *Kananian v. Lorillard Tobacco* Co.,

Cuyahoga County Common Pleas Court case number CV 442750.

(*Id.* at 1-5.)

On March 16, 2009, counsel for Mr. Andreas filed a Memorandum in Opposition to the Motion to Quash. (ECF # 42.) On March 20, 2009, counsel for Judge Hanna filed a Reply Brief in support of the Motion to Quash (ECF # 43.)[2] Thus, the Motion has been briefed fully and is now ripe for disposition.

## II. STANDARD OF REVIEW

On timely motion, the Court by which a subpoena was issued shall quash or modify the subpoena if it requires the disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden. *See* Fed. R. Civ. P. 45(c)(3)(iii)-(iv). The burden of establishing that the issued subpoena violates Rule 45 of the Federal Rules of Civil Procedure falls upon the movant. *See Recycled Paper Greetings, Inc. v. Davis*, No.1:08-MC-13, 2008 WL 440458, at *3 (N.D. Ohio February 13, 2008). In reviewing a motion to quash, the Court may consider "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case." *Id.* (citing *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003)). It is with this

---

[2]     On March 27, 2009, counsel for Mr. Andreas filed a Sur-Reply in Opposition to the Motion to Quash. (ECF # 44.) On April 3, 2009, counsel for Judge Hanna filed a Motion to Strike the Sur-Reply or, Alternatively, for Leave to file a Response, Instanter. (ECF # 45.) On April 13, 2009, counsel for Mr. Andreas filed a Reply to the Motion to Strike the Sur-Reply or, Alternatively, for Leave to file a Response, Instanter. (ECF # 46.)

As an initial matter, counsel for Mr. Andreas improperly filed the Sur-Reply (ECF # 44) without seeking leave of this Court to do so. Further, counsel for Mr. Andreas was provided adequate opportunity to present evidence and argument in support of his position in his Memorandum in Opposition to the Motion to Quash. Because the Court has before it an adequate record upon which to decide the Motion to Quash and has fully apprised itself of the facts and law relevant to this issue, the Motion to Strike the Sur-Reply is GRANTED. (ECF # 45.)

7

standard in mind that the instant Motion shall be decided.

## III. DISCUSSION

The Court's examination of the subpoena at issue shall be divided into three sections in this Opinion and Order. First, the Court shall examine the request for testimony concerning Judge Hanna's mental processes in reaching the decision in question. Next, the Court shall examine the request for testimony alleged to be factual in nature, unrelated to Judge Hanna's decision in the underlying case. Finally, the Court shall consider Plaintiff's attempt to subpoena documents from Judge Hanna.

### A. The Subpoenaed Deposition Testimony

### 1.    The Request For Testimony Concerning Judge Hanna's Mental Processes

The United States Supreme Court has long recognized the importance of respecting the judicial process, including protecting a judge from the type of scrutiny as is sought in the instant case. *See United States v. Morgan*, 313 U.S. 409, 422 (1941). In *United States v. Morgan*, the Supreme Court announced what is commonly referred to as the "mental process rule." *Id.* In that case, the Supreme Court examined a District Court's decision to compel the Secretary of Agriculture to testify as to the manner in which he reached a decision in an administrative order. *Id.* In finding the decision to compel was in error, the Supreme Court noted that the proceeding before the Secretary had a "quality resembling that of a judicial proceeding." *Id.* On this basis, the Supreme Court found that the Secretary, like a judge in an analogous situation, should never have been subjected to the examination. *Id.* The Supreme Court stated:

> We have explicitly held in this very litigation that it was not the function of the court to probe the mental processes of the Secretary. Just as a Judge cannot be subjected to such scrutiny, so the integrity of the administrative processes must be equally

8

respected.

*Id.* (internal quotations and citations omitted). Noting that such examination of a judge would be destructive of judicial responsibility, the Supreme Court found that here too the examination of the Secretary of Agriculture should not have taken place. *Id.*

Undoubtedly due to the rare nature of an occasion on which a party makes the bold decision to subpoena a judge, there is very little authority in the Sixth Circuit related to this issue. Many years ago, the Sixth Circuit relied upon the *Morgan* decision in an administrative context in the analogous case of *Warren Bank v. Camp*, 396 F.2d 52, 56-57 (6th Cir. 1968). In that case, the Sixth Circuit held that the appellant was clearly not entitled to depose the U.S. Comptroller of Currency in order to probe his mind concerning how he exercised his discretion in relation to granting a charter to a new national bank. Thus, to the extent that any law exists in the Sixth Circuit, it points in favor of granting the Motion to Quash in this case.

Given that Sixth Circuit law on this issue is quite limited, a review the relevant persuasive authority is warranted. Such a review reflects that Courts of Appeals across this nation have made it clear that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the motivating reasons involved in the performance of official duties. *United States v. Roth*, 332 F. Supp.2d 565, 568 (S.D.N.Y. 2004). In the case of *Grant v. Shalala*, for instance, the Third Circuit noted that "[i]t has long been recognized that attempts to probe the thought and decision making processes of judges and administrations are generally improper." *Grant v. Shalala*, 989 F.2d 1332, 1344 (3rd Cir. 1993). The Fifth Circuit made a similar determination in *Robinson v. Commissioner of Internal Revenue*, a case which examined a subpoena of a state court judge to testify as to his

9

understanding and knowledge of a final judgment and what factors gave rise to its determination. *Robinson v. Commissioner of Internal Revenue*, 70 F.3d 34, 38 (5th Cir. 1995). Echoing the rulings of cases before it, the Court held clearly that, "A judge may not be asked to testify about his mental processes in reaching a judicial opinion." *Id.*; *see also Sanders v. Agnew*, No. 08-50407, 2009 WL 62248, at *7 (5th Cir. Jan. 12, 2009) (granting the motion to quash a subpoena where the testimony sought related to the judge's signing of a search warrant).

      Federal District Courts throughout the country have also reached the same determination with respect to this issue. For example, in *United States v. Edwards*, the Middle District of Louisiana held that an attempt to disqualify a judge based upon the notion that he may be sought as a witness was without merit. *United States v. Edwards*, 39 F. Supp.2d 692, 705 (M.D. La. 1999). In so holding, the Court indicated that cases are in agreement that "judges are under no obligation to divulge the reasons that motivated them in their official acts," and that "the mental processes employed in formulating the decision may not be probed." *Id.* (*quoting United States v. Cross*, 516 F. Supp. 700, 707 (M.D. Ga. 1981)); *see also Auguste v. Sullivan*, No. 03-cv-02256-PAB-KLM, 2009 WL 790135, at *1 (D. Colo. Mar. 20, 2009) (granting a motion to quash, recognizing the rule that a judge may not be compelled to testify as to his mental processes in formulating an official judgment); *Cavitt v. Wills*, No. 2:06-MC-42, 2006 WL 3792046, at *1 (W.D. Ark. Dec. 21, 2006) (finding that allowing the plaintiff to question a judge about a contempt hearing over which he presided would be inappropriate and against the overwhelming authority that a judge may not be compelled to testify as to his mental processes); *Roth*, 332 F. Supp.2d at 568 (stating that a judge may not be examined with respect to his mental processes).

10

Although the authority in the U.S. Courts of Appeals and District Courts is generally straightforward on this issue, its clarity is muddled to a limited extent by a decision arising out of the United States District Court for the Western District of Virginia in 1977. *See U.S. v. Dowdy*, 440 F. Supp. 894, 896 (D.C. Va. 1977). In *United States v. Dowdy*, the government sought to quash a subpoena issued by the defendant, that would have required a District Court judge to appear as a witness in the pending trial of an individual who was charged with making false statements before a grand jury. The alleged need for the testimony was based upon the defendant's position that the judge's actions coerced her into testifying and relinquishing her Fifth Amendment privilege against self-incrimination before the grand jury, thereby providing her a defense to the charge of making false statements. *Dowdy*, 440 F. Supp. at 896.

> In examining whether the judge should be required to testify, the Court stated:

> While a judge enjoys no special privilege from being subpoenaed as a witness, it is imperative when he is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth requiring his testimony. Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to frivolous attacks upon its dignity and integrity, and interruption of its ordinary and proper functioning.

*Id.* The *Dowdy* Court acknowledged the *Morgan* decision, but focused largely on a later decision arising out of the Supreme Court named *Citizens To Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971),[3] which found that an inquiry may be made of such an official, but only upon a "strong showing of bad faith or improper behavior." *Id.*

According to *Dowdy*, following the principle set forth in the *Citizens To Preserve* case, a judge could be compelled to testify as to his mental processes if the party seeking such testimony

---

[3]     *Abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

demonstrates "extreme and extraordinary circumstances." *See id.*[4] One District Court in this

jurisdiction relied upon this proposition in *In re Thompson*, 77 B.R. 113, 114-15 (N.D. Ohio

1987). In *Thompson*, the District Court stated that, "[o]nly under extraordinary circumstances

can a judge be required to testify concerning actions taken in his judicial capacity." *Id.* at 114.

Finding no extreme and extraordinary circumstances present in that case, however, the District

Court affirmed the decision of the Bankruptcy Court disallowing the testimony of a former

Bankruptcy Court judge to proceed. *Id.*

Although the *Thompson* case appears to be the sole matter in this jurisdiction that

acknowledges the "extreme and extraordinary" circumstances language in *Dowdy*, other Courts

have also adopted the language set forth in that decision, thereby suggesting that the mental

process rule is not absolute. In *United States v. Roebuck*, for instance, the Court found that "only

in the most extraordinary of cases, such as a strong showing of bad faith or improper behavior by

a judge or quasi-judicial officer or where the circumstances were such to overcome the

presumption of regularity as to the acts of the decision maker, may a judge be questioned as to

matters within the scope of his adjudicative duties." *United States v. Roebuck*, 271 F. Supp.2d

712, 718 (D.V.I. 2003).

Upon thorough research of existing case law and the briefs submitted by the parties, this

Court is unaware of any binding decision examining both the *Morgan* and *Dowdy* cases and

announcing definitively whether the mental process rule indeed is subject to an exception in the

case of extreme and extraordinary circumstances. Given the nature of this case, the Court finds

---

[4]  *Citing South Terminal Corp. v. EPA*, 504 F.2d 646 (1st Cir. 1974); *KFC Nat'l Mfg. Corp. v. NLRB*, 497 F.2d 298 (2d Cir. 1974), *cert.denied,* 423 U.S. 1087 (1976); *Montrose Chemical Corp. v. Train*, 491 F.2d 63 (D.C. Cir. 1974).

no better time to clarify the applicable rule. This Court finds that a strict construction of *Morgan*'s mental process rule governs, and it recognizes no exception for extreme and extraordinary circumstances.[5] Hence, in this Court, a judge can never be compelled to testify regarding the mental processes used in formulating official judgments or the reasons motivating the performance of official duties.

The need for a bright line rule on this issue is clear – absent such a rule, the judiciary would be subject to an open door policy, allowing anyone dissatisfied with a decision to cite extreme and extraordinary circumstances and expose a judge to subpoena. An examination of how the Court of Appeals for the Sixth Circuit functions makes clear that such a bright line rule is the logical outcome. In the Sixth Circuit, a three-judge panel is assigned to preside over a case. Each judge receives the record of the proceedings in the District Court, as well as the briefs filed by the parties on appeal. How a judge reviews that information, or with whom the judge decides to share that information, such as law clerks and other staff, is left to the discretion of individual judge. Oral argument is then held, during which a judge may or may not take notes. After oral argument is completed, there may be a conference among the judges, during which they may discuss the merits of a deciding the case a certain way. Drafts of an opinion may be shared back and forth between the judges and their staff, until finally a decision is issued.

If the decision issued by the Sixth Circuit leaves a client dissatisfied, that client may, depending upon the circumstances, opt to pursue a malpractice claim against his counsel based

---

[5] Further, even if it this Court were to recognize an exception for extreme and extraordinary circumstances, no such circumstances exist here. Mr. Andreas has failed set forth any argument or evidence sufficient to overcome the presumption of regularity that attaches to Judge Hanna's Order, which is supported well by the record in the underlying case.

upon the representation in the Sixth Circuit. One can assume that the action may be pursued in the District Court. If the *Dowdy* exception applies, in the District Court, new counsel for the client may subpoena a judge or the entire three-judge panel for testimony concerning the mental processes used in formulating the official judgment or the motivating reasons involved in the performance of official duties. As is alleged in this case, this information would be sought under the guise that the judge's mental processes are relevant to the malpractice case. If this Court were to adopt the exception in *Dowdy*, the party need only allege some sort of irregularity in the process to fall within the extreme and extraordinary circumstances exception. Indeed, this Court could find itself in the peculiar position of deciding whether to permit the deposition of a Sixth Circuit judge to proceed. This Court finds that such an outcome is more than undesirable, it is inappropriate. Certain information should just not be subject to discovery – plain and simple – and information as to the mental process of a judge is just such information.

The Supreme Court has long-recognized that a "judgment is a solemn record" and "parties have a right to rely upon it." *Fayerweather v. Ritch*, 195 U.S. 276, 307-308 (1904). Even prior to its decision in *Morgan*, the Supreme Court held that a judgment "should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge . . . of what he had in mind at the time of the decision." *Id.* Hence, it is only proper that a Court speaks through its journal, and there exists good reason why a judge is not competent to testify as a witness. *Coe v. Ziegler*, 657 F. Supp. 182, 182 (S.D. Ohio 1987); *see also U.S. v. Zipkin*, 729 F.2d 389 (6th Cir. 1984) ("An order entered by a judge should speak for itself and not be varied by parol testimony as to what was meant by its provisions."); *see* Fed. R. Evid. 605 ("The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order

14

to preserve the point.").

The rule in *Morgan* extends the proper respect to the judicial process and does not expose judicial officers to frivolous attacks that impair the functioning of the Court. Indeed, in reaching the decision that the mental process rule should be adopted without exception, this Court carefully reviewed each and every federal case that cites the *Dowdy* opinion. Those cases, which contain blanket language that the subpoena may proceed in extreme and extraordinary circumstances, in fact never find that such circumstances exist. *See U.S. v. Anderson*, 560 F.3d 275, 282 (5th Cir. 2009) (holding that the court did not abuse its discretion by quashing defendant's subpoena issued to a judge); *Gary W. v. La. Dep't of Health and Human Res.*, 861 F.2d 1366, 1369 (5th Cir. 1988) (affirming the refusal to allow the deposition of a special master); *U.S. v. Elmardoudi*, No. 06-CR-112-LRR, 2007 WL 1877978, at * 2 (N.D. Iowa June 27, 2007) (disallowing the subpoena of a district court judge); *Malone Mortgage Co. America, Ltd. v. Martinez*, No.3:02-CV-1870, 2003 WL 23272381, *3 (N.D. Tex. Jan. 6, 2003) (denying motion to compel discovery); *Roebuck*, 271 F. Supp.2d at 721 (holding that the judge could not be compelled to answer questions and the subpoenas are quashed); *McCoy v. Belmont*, no. 3:85 CV 465, 1999 WL 33117446, at * 2 (D. Conn. Aug. 9, 1999) (finding it inappropriate to subject the special master to an examination of his mental processes); *Edwards*, 39 F. Supp.2d at 705 (stating that even if the judge were subpoenaed, it is doubtful that he would be required to testify); *Beam v. Air Force*, 169 F.R.D. 309, 310 (D. Md. 1996) (granting motion to quash where plaintiffs failed to establish compelling reason or exceptional circumstances justifying inquiry into the magistrate's decision-making process); *In re Kline*, 172 B.R. 279, 282 (W.D. Mo. 1994) (finding that the deposition of a trial judge regarding his intent in ordering a debtor to pay

15

attorney fees was not admissible);[6] *Miller v. Silbermann*, No. 89CV3573, 1994 WL 185884, at *3 (S.D.N.Y. May 10, 1994) (granting motion to quash subpoenas of judges); *In re Thompson*, 77 B.R. at 114 (finding no extraordinary circumstances existed that would require the testimony of a former bankruptcy judge); *U.S. v. Ianniello*, 740 F. Supp. 171, 187 (S.D.N.Y. 1990) (finding that trial judge would not be required to give oral testimony and submit to cross-examination);[7] *U.S. v. Harvey*, 544 F. Supp. 189, 191 (S.D. Fla. 1982) (granting motion to quash subpoena of the district court judge); *In re Norman*, 12 B.R. 512, 514 (W.D. Mo. 1981) (disallowing testimony of a trial court judge); *U.S. v. Cross*, 516 F. Supp. 700, 707 (M.D. Ga. 1981) (finding that judge's subjective decision was made in exercise of the judge's judicial authority and was not subject to assault on witness stand);[8] *Peterson v. Sheran*, 474 F. Supp. 1215, 1221 (D. Minn. 1979) (quashing subpoena of Minnesota Supreme Court Chief Justice).[9] In fact, the *Dowdy* Court itself disallowed the testimony sought on the grounds that the defendant failed to show any extraordinary circumstances. *Dowdy*, 440 F. Supp. at 897. Based upon the foregoing, the Court finds it abundantly clear that Judge Hanna may not be compelled to testify regarding his mental processes, or the reasoning or motivation in formulating his official judgment.

---

[6]     *Rev'd on other grounds by* 174 B.R. 525 (W.D. Mo. 1994).

[7]     *Rev'd on other grounds sub nom., United States v. Salerno*, 937 F.2d 797 (2d Cir.1991), *cert. granted*, 502 U.S. 1056, *rev'd on other grounds*, 505 U.S. 317 (1992).

[8]     *Rev'd by* 708 F.2d 631 (11th Cir. 1983) (remanding to the district court for reconsideration in light of the fact that "testimony of a federal judge in this matter probably would not conflict with the general rule against probing a judge's mental processes"), *judgment vacated by* 468 U.S. 1212 (1984).

[9]     *Vacated in part on other grounds by* 635 F.2d 1335 (8th Cir. 1980).

## 2.  The Request For Testimony Alleged To Be Unrelated To Judge Hanna's Mental Processes

A different standard applies if the information sought is factual only, unrelated to a

judge's mental processes. Although the Sixth Circuit has yet to address specifically whether a

judge may be compelled to testify as a fact witness, this issue was examined in *United States v.*

*Roth*, 332 F. Supp. 2d 565, 568 (S.D.N.Y. 2004). The *Roth* Court, recognizing an absence of

controlling authority in the Second Circuit, looked to the Seventh Circuit's decision in *United*

*States v. Frankenthal*, 582 F.2d 1102 (7th Cir. 1978) for guidance. Examining *Frankenthal*, the

Court stated:

> the Seventh Circuit allowed the introduction of judicial testimony because the judge
> possessed factual knowledge that was highly pertinent to the jury's task, and he was
> the only possible source of testimony on that knowledge. However, in reaching its
> decision, the *Frankenthal* Court cautioned that calling a judge to give testimony in
> any proceeding is a very delicate matter. In fact, the judge's testimony was only
> permitted because the judge was only required to give brief, strictly factual testimony.

*Roth*, 332 F. Supp. 2d at 568 (quotations and citations omitted). Based upon that standard, the

Court adopted a three-part test to govern when a judge may be required to testify as a fact

witness. *Id.*

The three-part test in *Roth* provides that a judge may only be required to testify if: (1) he

possesses factual knowledge, (2) that knowledge is highly pertinent to the jury's task, and (3) he

is the only possible source of such information. *Id.* Further, even if a party characterizes

questions as factual in nature and claims that they do not implicate the judge's mental processes,

if such questions are "so directly tied to, and so strongly infer," the judge's mental processes,

they shall not be permitted. *See Auguste*, 2009 WL 790135, at *1. Stated differently, "even

though a particular inquiry may be factually directed, it may still be objectionable if it invades

17

upon an official's good-faith decision-making prerogative." *Edwards*, 39 F. Supp.2d at 706.

In this case, Mr. Andreas claims to be seeking factual information consisting of: (1) alleged "substantive *ex parte* conversations" in the underlying case; (2) alleged "private, extra-judicial conferences" in which Judge Hanna discussed the underlying case; and (3) Judge Hanna's testimony before the Ohio Senate Judiciary Committee. (ECF # 42 at 3 (footnotes omitted).) After a thorough review of the record before it, this Court finds that the arguments set forth in support of obtaining such information are entirely lacking in merit.

There is no dispute that Judge Hanna possesses factual information regarding the underlying matter. Hence, the first part of the three-part test in *Roth* is satisfied. The Court thus looks to the alleged factual information sought only to determine if is highly pertinent and whether Judge Hanna is the only possible source of such information.

As to the alleged "substantive *ex parte* conversations," the alleged "private, extra-judicial conferences," and the testimony before the Ohio Senate Judiciary Committee, Mr. Andreas fails to demonstrate that such information is highly pertinent to the jury's task in this case. Even assuming *arguendo* that such information was highly pertinent, there exists no question that  Judge Hanna would not be the only possible source of such information and testimony.  A careful review of the arguments in support of the so-called factual information reveals them to be nothing but a subterfuge, designed to distract the Court from the true purpose for the subpoena, which is to delve into Judge Hanna's mental processes. Although Mr. Andreas characterizes these topics as factual, and contends that they do not implicate the Judge's mental processes, this Court finds that such areas of inquiry are inextricably intertwined with the Judge's

18

mental processes, and thus they are prohibited.  Based on the foregoing, Judge Hanna may not be

compelled to testify as to this information.

## B. The Subpoenaed Documents

The arguments presented in the Motion to Quash pertain primarily to the testimony

sought from Judge Hanna in the subpoena.  The documents and records subpoenaed are

addressed only briefly in footnote absent any authority, which states:

> The same arguments apply to the records which have been subpoenaed.  The records
> sought concern Judge Hanna's mental processes used in formulating his January 18,
> 2007 "Opinion and Order" and/or the reasons that motivated him in the performance
> of his official duties.  The Court file for the underlying case is in the custody of the
> Cuyahoga Clerk of Court's office, and is available for review.

(ECF # 41 at n.4.)  Thus, counsel for Judge Hanna argues that the Judge may not be compelled to

produce documents concerning his mental processes reasoning and/or motivation in formulating

his official judgment.  (*Id.*)  The Opposition to the Motion to Quash contains no argument

concerning the need for such documents or supporting case law – it merely mentions that such

documents are requested.  (ECF # 42 at 1-2.)

This Court has uncovered the apparent reason that the briefs fail to provide any authority

addressing this issue.  This Court itself has conducted an exhaustive search on the topic, finding

just a couple of cases that  mention the issue of documents sought in a subpoena to a judge only

peripherally.  In *Dalcour v. Lakewood*, the United States District Court for the District of

Colorado was presented with a situation where, as here, a non-party judge sought to quash a

subpoena served upon him seeking deposition testimony and the production of documents

relating to a case that had been before him, in which he issued a formal order.  *Dalcour v.*

19

*Lakewood*, No. 08-cv-00747-MSK-KLM, 2008 WL 3845289, at *2 (D. Colo. Aug. 14, 2008). The Court quashed the subpoena to the extent that it sought documents that were not a part of the public case file. *Id.* In doing so, the Court did not provide analysis that separately addressed the request for testimony and the request for documents. *Id.* Instead, the Court referred to generally to the presumption against judicial testimony, noting that Courts allow it only if extreme circumstances exist or there is evidence of bad faith or improper motive. *Id.* at *1. It likewise noted the mental process rule set forth by the Supreme Court in *Morgan*. *Id.* at *2. Thus, it did not discuss any privilege or particular law that would apply to the documents requested. *Id.*

The same approach was taken by the Court in *United States v. Roebuck*, wherein the Court merely stated that the documents sought from judges "would serve no useful information in light of the information already contained in the record and information which can be further provided to the Court." *Roebuck*, 271 F. Supp.2d at 726. On this basis, the Court granted the Motion to Quash the subpoena. *Id.*

Based upon the law as set forth in this Memorandum Opinion and Order, the Court finds that a bright line rule should be applied in this context. In particular, this Court finds that a judge may not, under any circumstances, be compelled to produce documents relating to his mental processes, or the reasoning or motivation in formulating his official judgment. There exists no exception for extreme and extraordinary circumstances. Because a Court speaks through its journal, such information is simply not subject to discovery.[10]

---

[10]    The deliberative privilege would also likely operate to bar access to many of the documents requested. The privilege is described generally as applying to "all material reflecting the actual pre-decisional, mental, or deliberative process – inter- and intra-governmental evaluations, expressions of opinion, and recommendations on policy and decision-making matters." *United States v. Hooker Chem. & Plastics Corp.*, 123 F.R.D. 3, 8 (W.D.N.Y. 1988). To invoke the

Here, the Court finds in no uncertain terms that the subpoena attempting to obtain documents from Judge Hanna relating to his mental processes should be quashed. Judge Hanna spoke clearly in his 19-page Opinion and Order, and Mr. Andreas has unfettered access to the public Court file. Because the Court speaks through its journal, no documents concerning Judge Hanna's mental processes need to be produced.

To the extent that the documents sought are allegedly factual in nature, unrelated to a judge's mental processes, the Court finds it appropriate to apply the three-part test set forth in the *Roth* decision. Hence, a party may only discover documents from a judge if: (1) they contain factual information, (2) that information is highly pertinent to the jury's task, and (3) they are the only possible source of such information. *See Roth*, 332 F. Supp. 2d at 568.

The narrow criteria in *Roth* would and indeed should bar a party from obtaining documents in every instance this Court can imagine. In this case, the record is devoid of any evidence even suggesting that the requested documents exist, let alone that they satisfy the criteria set forth in *Roth*. There has been no showing as to the relevance of the material sought and no demonstration that the requested documents represent the only viable means to obtain the evidence. In sum, Mr. Andreas has failed to establish any need for such evidence. Furthermore, even had he presented such a need, the need must be balanced against the critical role of the judicial decision-making process. There is no question that, but for the most exceptional of cases, the importance of preserving the integrity of the judiciary would far outweigh any purported need.

---

deliberative privilege, however, there must be a specific designation of the documents claimed to be privileged, accompanied by an explanation of the need to preserve the confidentiality of the documents at issue. *See id.* Such an invocation did not occur in this case.

21

Pursuant to Rule 45, the Court finds the subpoena for production of documents to be unreasonable.

## C. Summary

The Court has reviewed the totality of the materials submitted by Mr. Andreas and finds that he may, under no circumstances, seek Judge Hanna's testimony as to the reasons giving rise to his Opinion and Order. The Opinion and Order speaks for itself. Furthermore, the Court finds that the so-called factual testimony sought is not highly pertinent to this case. In addition, Mr. Andreas has failed to demonstrate that Judge Hanna's testimony is the only possible source of such evidence. The Court likewise finds that Mr. Andreas may not, under any circumstances, seek the production of documents as to Judge Hanna's mental processes. To the extent that the documents sought are purportedly unrelated to Judge Hanna's mental processes, the Court finds that Mr. Andreas had made no showing as to the relevance of the material and no demonstration that the requested documents represent the only viable means to obtain the evidence. Hence, the subpoena for production of purportedly factual documents is unreasonable. Based upon the foregoing, the Motion to Quash is GRANTED in its entirety.

## IV. CONCLUSION

For the reasons set forth above, the Motion to Strike the Sur-Reply filed by counsel for Judge Hanna is GRANTED. (ECF # 45.) In addition, Motion to Quash the Subpoena issued to Judge Hanna is GRANTED. (ECF # 41.)

IT IS SO ORDERED.

DONALD C. NUGENT

United States District Judge

DATED: May 29, 2009